UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES G. HUGUNIN, an individual; LAND O' LAKES OUTDOORS, INC., and LAND O' LAKES TACKLE CO., INC., Illinois corporations,<br><br>        Plaintiffs and<br>        Counter-Defendants,<br><br>    v.<br><br>LAND O'LAKES, INC., a Minnesota corporation,<br><br>        Defendant and<br>        Counter-Plaintiff. | Case No. 11 C 9098<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

On December 22, 2011, James Hugunin, Land O' Lakes Outdoors, Inc. and Land O' Lakes Tackle Co., Inc., filed a five-count complaint against Land O'Lakes, Inc. ("LOL"), alleging federal trademark infringement (Count I); unfair competition under federal law (Count II); unfair competition under Illinois common law (Count III); common law trademark infringement (Count IV); and unfair competition under the Illinois Deceptive Trade Practices Act (Count V). LOL has filed counterclaims alleging federal trademark infringement (Count I); federal false designation of origin (Count II); federal trademark dilution (Count III); unfair competition under the Illinois Deceptive Trade Practices Act (Count IV); and trademark dilution under Illinois law (Count V).

Now before the court are both parties' motions for partial summary judgment. Hugunin seeks partial summary judgment in his favor on LOL's federal dilution and Illinois dilution claims, and LOL seeks partial summary judgment in its favor on its federal dilution claim and on

all of Hugunin's claims. For the reasons stated below, Hugunin's motion is denied, and LOL's motion is granted in part and denied in part.

## I. BACKGROUND

LOL is an agricultural cooperative based in Arden Hills, Minnesota. Since the 1920s, LOL has sold butter and other dairy products across the United States using the trademark LAND O LAKES. The Land O'Lakes brand enjoys a high level of consumer recognition—a 2006 survey of 873 butter consumers found that 99% were aware of the brand, and 85% had used or tried LOL dairy products.

In addition to traditional print and television advertising, LOL has promoted its dairy products by sponsoring a number of different sporting events. In 1997, LOL entered into an agreement to become the official dairy sponsor of a sport fishing tournament known as the Wal-Mart FLW Tour. As a result of the sponsorship, LOL's dairy products were displayed at tournament venues and included in tournament promotional materials, and the tournament's "Angler of the Year Award," was renamed the "Land O Lakes Angler of the Year Award."

Jim Hugunin is a general contractor who resides in Illinois. In 1997, he won a fishing competition, the Vilas County Musky Marathon, using a fishing lure that he had created. After winning the competition, Hugunin decided to manufacture and sell fishing tackle for his friends and local guides who lived around the Land O' Lakes, Wisconsin, region. He sold the fishing tackle using the same LAND O LAKES mark that LOL used to sell its dairy products. Hugunin sold his first fishing lure on August 25, 1997, through a company he had created called the Land O' Lakes Tackle Company. On August 9, 1999, he applied to register the LAND O LAKES trademark, and the United States Patent and Trademark Office issued him a registration certificate on June 6, 2000.

On December 8, 2000, LOL sent a letter to Hugunin regarding his use of the LAND O LAKES mark. The letter stated in relevant part:

> Gentlemen:
>
> It has come to our attention that you have obtained a registration for LAND O LAKES for fishing tackle. Please be advised that Land O'Lakes, Inc., has been using the trademark LAND O LAKES in the fishing industry well prior to your use of the trademark LAND O LAKES. . . .
>
> Land O'Lakes, Inc. is concerned that your company's use of the LAND O LAKES trademark infringes and dilutes Land O'Lakes' trademark usage in the fishing industry and elsewhere. You should note that Land O'Lakes is considered a famous trademark and therefore, it is eligible for remedies under the anti-dilution statute (15 U.S.C. § 1125(c)), in addition to traditional trademark remedies. . . .
>
> Land O'Lakes is at the present time not going to request that you stop using the LAND O LAKES trademark. Instead, we would like to offer you a proposal which will meet Land O'Lakes' immediate concern, that is your infringement and dilution of its trademark LAND O LAKES. We are proposing that you continue using your trademark LAND O LAKES under a paid-up license from Land O'Lakes[,] the terms of which will be defined in a written agreement. . . .

(Hugunin Decl. Ex. 16 (Dec. 8, 2000, Letter), ECF No. 3-9.) The parties never reached any agreement, and several years passed without any discussions between LOL and Hugunin. Then, on February, 12, 2008, LOL opposed an application that Hugunin had made to renew his registration of the LAND O LAKES mark before the Trademark Trial and Appeal Board of the United States Patent and Trademark Office ("TTAB"). The proceeding before the TTAB is on hold pending the outcome of this litigation.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). The court ruling on the motion construes all facts and

makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

### III. HUGUNIN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Hugunin's motion for partial summary judgment targets LOL's federal and Illinois dilution claims asserted in Counts III and V. In its response to the motion, LOL has agreed to withdraw the Illinois dilution claim. With respect to LOL's federal dilution claim, Hugunin argues that is barred by (i) the statute of limitations, (ii) the doctrine of laches; and (iii) the doctrine of acquiescence.

**A. Statute of Limitations**

Hugunin argues that LOL's federal dilution claim is barred by the four-year statute of limitations under 28 U.S.C. § 1658. LOL argues that Hugunin waived his right to assert a statute of limitations affirmative defense by not raising it before his motion for summary judgment.

Federal Rule of Civil Procedure 8(c) requires a party to include affirmative defenses, including a statute of limitations affirmative defense, in its answer to a claim. *See Williams v. Lampe*, 399 F.3d 867, 870-71 (7th Cir. 2005). Where a party fails to raise a statute of limitations defense in its answer, it is generally considered waived. *Stupak v. Hoffman-La Roche, Inc.*, 315 F. Supp. 2d 970, 972 (E.D. Wis. 2004). The purpose of this rule is to avoid surprise and prejudice by providing the party asserting the claim notice and opportunity to demonstrate why the defense should not prevail. *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997) ("If Rule 8(c) is not to become a nullity, we must not countenance attempts to invoke such defenses at the eleventh hour, without excuse and without adequate notice to the plaintiff.").

The court agrees that Hugunin has waived his statute of limitations defense by not raising the defense in his answer to LOL's counterclaims. (*See* ECF No. 18.) Hugunin has not provided the court with any reason why he should be able to assert the defense now—his reply makes no mention of the issue. Although the court has discretion to permit Hugunin to amend his answer if he requests to do so, *Williams*, 399 F.3d at 871, Hugunin has made no such request, and the case has advanced to the point where adding a new issue would prejudice LOL. His motion for summary judgment on this ground is denied.

**B. Laches**

Hugunin argues next that LOL's federal dilution claim is barred by the equitable defense of laches. "The doctrine of laches is derived from the maxim that those who sleep on their rights, lose them." *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792-93 (7th Cir. 2002). For laches to apply in a trademark infringement case, the defendant must show that (1) the plaintiff had knowledge of the defendant's use of an allegedly infringing mark; (2) the plaintiff inexcusably delayed in taking action with respect to the defendant's use; and (3) the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time. *Id.* Because the defense of laches "generally requires a fact-intensive inquiry," it is "usually not amenable to being resolved on summary judgment." *AutoZone, Inc. v. Strick*, No. 03 C 8152, 2005 WL 2978708, at *4 (N.D. Ill. Nov. 3, 2005).

Here, the court finds that it cannot determine that the doctrine of laches bars LOL's claim as a matter of law, as there is a genuine dispute of fact as to whether Hugunin would be prejudiced by allowing LOL to assert its rights at this time. Prejudice may be shown "if the plaintiff's unexcused failure to exercise its rights caused the defendant to rely to its detriment and build up a valuable business around its trademark." *Chattanoga*, 301 F.3d at 795. The

magnitude of prejudice required before the suit should be barred depends on the length of the plaintiff's delay. Where the delay is lengthy, "prejudice is more likely to have occurred and less proof of prejudice will be required." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999). Where the length of the delay exceeds the applicable state limitations period (which is three years in this case), prejudice is presumed, and the plaintiff bears the burden of identifying evidence that creates a genuine issue of fact as to whether the delay prejudiced the defendant. *R2 Med. Sys., Inc. v. Katecho, Inc.*, 931 F. Supp. 1397, 1408 (N.D. Ill. 1996).

Because LOL waited a considerable amount of time—eleven years—after it knew of Hugunin's use of the LAND O LAKES mark, there is a presumption that Hugunin would be prejudiced by LOL's delay. Even so, LOL has identified evidence creating a genuine issue of fact as to whether Hugunin would suffer even a modest amount of prejudice were LOL permitted to assert its rights. LOL refers the court first to Hugunin's complaint, in which he admits that he was unable to obtain funding for his tackle business after 2002 given the uncertain status of the LAND O LAKES trademark. (Compl. ¶ 41, ECF No. 1.) Hugunin repeated this allegation at his deposition. (Steffen Decl. Ex. T (Hugunin Dep.) 75:21-76:20, ECF No. 35-6.) Hugunin has also stated that LOL's December 8, 2000, letter left him "unable to provide assurances to potential investors or take other steps necessary to grow his business." (Pl.'s Resp. to Def.'s Statement of Facts ("SOF") ¶ 2, ECF No. 82.) While Hugunin claims that he has sold "hundreds of thousands of dollars'" worth of product since 2001, LOL disputes this, and correctly notes that the evidence cited by Hugunin does not support this figure. (*See* Def.'s Resp. to Pl.'s SOF ¶ 22, ECF No. 60.)

Furthermore, though prejudice is presumed, it is worth noting that Hugunin devotes just one sentence in his brief to support his argument on this issue. He claims that "[i]n the years following Defendant's letter and its failure to respond to Mr. Hugunin's efforts[,] Plaintiffs

6

business grew and was able to obtain over $1M in investments." (Pl.'s Br. 8-9, ECF No. 45.) To support this claim, Hugunin cites a 2013 Land O' Lakes Tackle Co. investment balance summary. The summary consists of two columns: a column listing purported investors' names, and a column listing the amount owed to them as of 2013. It contains no information about when the investments were made, under what circumstances they were made, or any documentation to verify the amounts listed. Without such information, the court cannot find, as a matter of law, that Hugunin "buil[t] up a valuable business around [his] trademark." *Chattanoga*, 301 F.3d at 795. Based on this record, a reasonable trier of fact could conclude that Hugunin would not suffer even a modest amount of economic prejudice if LOL were permitted to assert its rights. Accordingly, the court denies summary judgment on this ground.

## C. Acquiescence

Finally, Hugunin argues that LOL's federal dilution claim is barred by the equitable defense of acquiescence. "Unlike laches, acquiescence implies active consent to an infringing use of the mark and requires a defendant to establish that (1) the senior user actively represented it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503, 513 (N.D. Ill. 2011). Because the court has already found that there is a genuine dispute of fact as to whether LOL's delay caused Hugunin undue prejudice, the court denies summary judgment on this ground as well.

## IV. LOL'S MOTION FOR PARTIAL SUMMARY JUDGMENT

LOL seeks summary judgment in its favor on its federal dilution claim and on all of Hugunin's claims.

7

## A. LOL's Federal Dilution Claim

In order to prove trademark dilution under 15 U.S.C. § 1125(c), LOL must establish that (1) its mark is famous; (2) Hugunin's use began after the mark became famous; (3) Hugunin's use "causes dilution" of the mark; and (4) Hugunin's use is commercial and in commerce. *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 785 (N.D. Ill. 2011) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 466 (7th Cir. 2000)). The court focuses its analysis on the third element—whether LOL has established as a matter of law that Hugunin's use causes dilution of the LAND O LAKES mark.

LOL argues that Hugunin's use causes dilution by blurring. Dilution by blurring occurs when a defendant's use of a famous mark causes an association in the consumer's mind "that impairs the distinctiveness of" the famous mark. 15 U.S.C. § 1125(c)(2)(B). "Some classic examples of blurring include 'hypothetical anomalies [like] Dupont shoes, Buick aspirin tablets, Schlitz varnish, Kodak pianos, Bulova gowns, and so forth.'" *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir. 2009) (quoting *Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1031 (2d Cir. 1989)). While the theory underlying traditional trademark law is that competitors should not be allowed to create a confusingly similar mark to appropriate the goodwill created by the producer of a successful brand, the theory underlying dilution is different. The theory underlying dilution is that "consumer search costs will rise if a trademark becomes associated with a variety of unrelated products." *Ty Inc. v. Perryman*, 306 F.3d 509, 511 (7th Cir. 2002). As the Seventh Circuit has explained:

> Suppose an upscale restaurant calls itself "Tiffany." There is little danger that the consuming public will think it's dealing with a branch of the Tiffany jewelry store if it patronizes this restaurant. But when consumers next see the name "Tiffany" they may think about both the restaurant and the jewelry store, and if so the efficacy of the name as an identifier of the store will be diminished. Consumers will have to think harder—incur as it were a higher imagination cost—to

recognize the name as the name of the store.

*Id.* at 511. To succeed on its dilution claim, then, LOL need not offer any evidence that consumers are likely to be confused into thinking that LOL is the source of Hugunin's fishing tackle. Rather, LOL need show only that Hugunin's use is likely to impair the distinctiveness of the LAND O LAKES mark.

To determine whether LOL has met this standard, federal law provides that courts may consider all relevant factors, including:

> (1) The degree of similarity between the mark or trade name and the famous mark;
>
> (2) The degree of inherent or acquired distinctiveness of the famous mark;
>
> (3) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark;
>
> (4) The degree of recognition of the famous mark;
>
> (5) Whether the user of the mark or trade name intended to create an association with the famous mark; and
>
> (6) Any actual association between the mark or trade name and the famous mark.

15 U.S.C. § 1125(c)(2)(B). This is a "fact-intensive inquiry," *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014), which means that summary judgment will be inappropriate unless "the evidence is so one-sided that there can be no doubt about how the question should be answered." *World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831, 846 (N.D. Ill. 2002).

The court does not find the evidence to be so one-sided here. On the one hand, the first four factors appear to weigh in LOL's favor. The two marks are identical, so the first factor clearly supports LOL. With respect to the second factor, it is undisputed that LOL has continuously used the LAND O LAKES trademark since the 1920s and that the mark has achieved broad customer recognition, which supports a finding of distinctiveness. With respect to the third factor, while Hugunin has noted that some other small, local companies haved used

Land O' Lakes in their names, this factor still supports LOL. *See World Impressions*, 235 F. Supp. 2d at 847 (finding that evidence that others used the word "Disneyland" was insufficient to show that Disney's mark had lost its distinctiveness, as it did not show "extensive copying by third parties"). The fourth factor also favors LOL, as it is undisputed that the LAND O LAKES mark enjoys broad recognition.

But the fifth and sixth factors do not appear to weigh in favor of LOL, at least not on the record that is presently before the court. Hugunin has stated that he used the LAND O LAKES mark not to create an association with LOL, but to describe the geographic area where his fishing tackle company was based. LOL notes that Hugunin also admitted that he adopted the mark with full knowledge of LOL's prior use and with full knowledge that consumers mentally associated the two marks. But this merely creates an issue of fact as to Hugunin's true intent, which the court cannot resolve on a motion for summary judgment. With respect to the sixth factor, there is insufficient evidence of any actual association between the two marks. The only evidence that LOL offers in support of actual association is Hugunin's own statements that unidentified third parties asked Hugunin whether his company was affiliated with LOL. In another section of its brief, however, LOL persuasively argues that these "purported questions from unidentified third-parties" are unreliable and insufficient to show any actual confusion among consumers. (Def.'s Br. 15, ECF No. 32.) Moreover, even if the court were to credit this evidence and find that LOL has shown a likelihood of association, it would not necessarily follow that the association "impair[ed] the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(b); *see also* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:116 ("Even if there is proof of a likely association, that does not mean that there is also a likelihood of dilution by blurring or tarnishment. The statute explicitly requires proof of the likelihood that th[e] defendant's use

'impairs the distinctiveness of the famous mark.'" (footnotes omitted)). A reasonable trier of fact could conclude that, although consumers are likely to *think* of Land O' Lakes butter when they hear of Land O' Lakes tackle, that association is not likely to *impair* the distinctiveness of the LAND O LAKES mark. *See Swatch*, 739 F.3d at 757 (finding that plaintiff had not shown likelihood of dilution by blurring where factors 2-4 favored plaintiff but factors 1, 5, and 6 favored defendants). Accordingly, the court denies LOL's motion for summary judgment on this claim.

## B. Hugunin's Claims

All of Hugunin's claims are premised on the allegation that LOL engaged in trademark infringement by using the LAND O LAKES mark in the fishing industry. The Lanham Act defines trademark infringement as follows:

> (1) Any person who shall, without the consent of the registrant—
>
> (a) use in commerce any reproduction, counterfeit, copy or colorable limitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .
>
> shall be liable in a civil action by the registration for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a).

LOL argues that all of Hugunin's claims fail as a matter of law because LOL has never actually sold fishing tackle and therefore has never "used" the LAND O LAKES trademark in the fishing industry in a way that would subject it to liability for trademark infringement. Hugunin concedes that LOL has never actually used the LAND O LAKES mark to sell fishing tackle for its own benefit, but argues that LOL is nevertheless liable for trademark infringement because it "allow[ed] others to use the LAND O LAKES mark to sell fishing tackle in competition with Plaintiffs." (Pl.'s Opp. Br. 7, ECF No. 61.)

As an initial matter, Hugunin does not cite any authority to support the theory that simply because LOL "allowed others" to use the LAND O LAKES mark, it can be held liable for trademark infringement. His argument appears to be that LOL should be held secondarily liable for the direct infringement of his competitors, though he does not state his argument in those terms. It is true that a party that does not directly infringe on another's mark may be found secondarily liable for the infringement of others under theories of contributory or vicarious liability. *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1148 (7th Cir. 1992). But to establish contributory liability, Hugunin would need to prove that LOL "either intentionally induce[d] a third party to infringe the plaintiff's mark or supplie[d] a product to a third party with actual or constructive knowledge that the product is being used to infringe the mark." *SB Designs v. Reebok Int'l, Ltd.*, 338 F. Supp. 2d 904, 911 (N.D. Ill. 2004) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853–54 (1982)). To establish vicarious liability, Hugunin would need to prove that LOL and the infringer "ha[d] an apparent or actual partnership, ha[d] authority to bind one another in transactions with third parties[,] or exercise[d] joint ownership or control over the infringing product." *Id.* at 909 (citing *Hard Rock Cafe*, 955 F.2d at 1150 (7th Cir. 1992)). Both theories require proof of direct infringement by a third party. *Monotype Imaging, Inc. v. Bitstream, Inc.*, No. 03 C 4349, 2005 WL 936882, at *3-7 (N.D. Ill. Apr. 21, 2005).

Hugunin has made no allegations and identified no evidence to support either of these theories. His claim is simply that because LOL sponsored the Angler of the Year competition and allowed the winners of that competition to sell tackle as the "Land O' Lakes Angler of the Year," LOL is liable for trademark infringement. Even were this sufficient to state a claim for trademark infringement, which is itself dubious, Hugunin has offered no evidence to support it.

The one document that he cites to support his claim that LOL allowed others to use his mark, a declaration by LOL's general counsel, states, "Fishing tackle has been promoted and used at fishing tournaments including tournaments sponsored by LOL. Fishing tackle is also used by fishing professionals at fishing tournaments, including tournaments sponsored by LOL." (O'Brien Decl. Ex. 18 (Janzen Decl.) ¶ 13, ECF No. 43-18.) This says nothing about whether LOL allowed others to use the LAND O LAKES mark. Absent any evidence of a relationship between LOL and Hugunin's competitors, LOL cannot be held liable for their alleged infringement. Accordingly, LOL's motion for summary judgment on Hugunin's claims is granted.[1]

### V. CONCLUSION

Hugunin's motion for summary judgment on LOL's federal dilution claim is denied. LOL's motion for summary judgment on its federal dilution claim is also denied. LOL's motion for summary judgment on Hugunin's claims is granted. Parties are to appear for a status hearing on April 11, 2014.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 19, 2014

---

[1] Because the court finds that LOL is entitled to summary judgment on this ground, the court does not address LOL's alternative arguments that Hugunin's claims are barred by the doctrine of laches and that Hugunin is barred from recovering certain categories of damages.